## KRAUSS *et al.* *v.* NATIONAL BANK OF BRUNSWICK.

No. 11839. JUNE 16, 1937.

*Krauss & Strong, Ringel & Ringel, C. L. Shepard, J. T. Powell, W. C. Little, G. B. Cowart,* and *H. O. Farr,* for plaintiffs in error.

*Reese, Scarlett, Bennel & Highsmith,* contra.

BECK, Presiding Justice. On July 12, 1901, D. W. Krauss, one of the plaintiffs in error, executed and delivered to Mrs. D. W. Krauss (then Mrs. Minnie L. Parker), the other plaintiff in error, a mortgage creating a lien upon Old Town Lot number 243 in the City of Brunswick, to secure a note bearing even date with said mortgage (July 12, 1901), in the principal sum of $1800, due two years after date. This mortgage was duly recorded in the office of the clerk of the superior court of Glynn County. On December 11, 1907, D. W. Krauss executed and delivered to the National Bank of Brunswick, the defendant in error, a mortgage conveying said Old Town Lot No. 243, and other property, as security for an indebtedness of $18,481.58, which mortgage further provided that it should not only secure the indebtedness

therein specifically described, but as well any and all indebtedness of said D. W. Krauss to the National Bank of Brunswick, whether as maker or indorser of commercial paper, and whether then existing or thereafter arising up to a total of $20,000. This mortgage also was duly recorded. At the time of its execution and delivery the National Bank of Brunswick was advised of the existing mortgage from D. W. Krauss to Mrs. Minnie L. Parker. On September 11, 1916, the National Bank of Brunswick took a new mortgage from D. W. Krauss, securing an indebtedness at the time of its execution of $18,035 principal, including the unpaid balance secured by the mortgage held by said bank from D. W. Krauss under date of December 11, 1907, above mentioned, and certain additional money put up by the bank at the time of the execution of said new mortgage. This mortgage also not only secured the indebtedness specifically described therein at the time of its execution, but also provided for the securing of any and all indebtedness of said D. W. Krauss to the bank, whether then existing or thereafter arising, up to a total of $24,500, and conveyed said Old Town Lot number 243 and other property. This new mortgage was a refinancing arrangement whereby the existing mortgage from D. W. Krauss to the bank, dated December 11, 1907, was canceled of record, and in its place the mortgage just referred to was taken. Both of said mortgages contemplated a revolving credit and security arrangement whereby D. W. Krauss would from time to time discount commercial paper with the bank and receive the proceeds thereof, the bank advancing the money on the security of the aforesaid mortgage. At the time of the taking of this second mortgage, D. W. Krauss, it is alleged, represented to the bank that the debt secured by his mortgage to Mrs. Minnie L. Parker, whom he had married in the meantime, had been fully paid up, but that the original paper had been lost or destroyed, and from time to time thereafter the bank requested D. W. Krauss to make efforts to locate the original mortgage to Mrs. Minnie L. Parker, so that a proper cancellation thereof might .be placed of record, and on each of these occasions the bank was informed by him that the debt secured by the mortgage to Mrs. Parker, then his wife, had been paid, and that in any event the mortgage was barred by the statute of limitations and no longer constituted a lien against the property covered thereby, and that there was no

need for the bank to be concerned about the matter. Upon these assurances the bank continued to advance new money to D. W. Krauss and to discount commercial paper for him upon the security afforded by its aforesaid mortgage from him, dated September 11, 1916.

On August 6, 1935, the National Bank of Brunswick purchased said Old Town Lot number 243 at a sale thereof made by George M. Owens, sheriff of Glynn County, Georgia, pursuant to a levy thereon and a sale thereof under a mortgage-foreclosure fi. fa. issued at the May term, 1935, of the superior court of Glynn County. The National Bank went into possession of the property, and is still in possession thereof. The debt due the bank at the time of the foreclosure of its mortgage was the principal sum of $7562.50, and was practically all money advanced by the bank to Krauss subsequently to the time the mortgage from D. W. Krauss to Minnie L. Parker became barred by the statute of limitations. Returnable to the December term, 1935, of the superior court of Glynn County, Mrs. D. W. Krauss (formerly Mrs. Minnie L. Parker) filed suit against D. W. Krauss on the promissory note dated July 12, 1901, and due two years after date, and secured by the aforesaid mortgage of D. W. Krauss to Mrs. Minnie L. Parker, dated July 12, 1901. The sum sued for was the principal sum of $1800, with interest thereon from July 12, 1901, at eight per cent. per annum, besides ten per cent. of the principal and interest as attorney's fees. The suit also sought a special lien against Old Town Lot number 243 to be set up and established for the amount of such judgment as Mrs. Krauss might recover against her husband. The National Bank of Brunswick was not made a party to said suit, and D. W. Krauss filed an answer admitting the allegations of said petition, and failed and refused to set up as a defense to the action the payment of the debt or plea of the statute of limitations. Returnable to the December term, 1936, of the superior court, the National Bank of Brunswick filed suit against D. W. Krauss and Mrs. Krauss (formerly Mrs. Minnie L. Parker), setting up substantially the facts stated above, praying that the mortgage from D. W. Krauss to Mrs. Parker, dated July 12, 1901, covering Old Town Lot No. 243, be adjudged to be forever barred by the statute of limitations, and that her mortgage be canceled and satisfied of record,

to remove the same as a cloud upon the title of the bank, and for. an injunction restraining Mrs. Krauss from further prosecuting her pending suit against her husband, seeking a judgment against him for the note secured by the aforesaid mortgage in so far as said suit sought to establish a special lien against Old Town Lot number 243. To this suit Mrs. Krauss filed general and special demurrers, which were overruled, and she and her husband excepted.

The court did not err in overruling the demurrers to the petition of National Bank of Brunswick, the defendant in error. The debt secured by the mortgage had long been barred by the statute of limitations when Mrs. Krauss brought suit on the note seeking judgment against D. W. Krauss, but the defendant in error could not obtain adequate relief in a common-law court. The relief sought by the bank is necessary to remove a cloud upon its title to the property in question. Unless that cloud is removed, it could not obtain full value for the property if it sought to sell it or to convert it into money or other property. It was substantial relief that it sought and was entitled to. It is urged by counsel for plaintiffs in error that the plea of the statute of· limitations is a personal privilege, and that no one but D. W. Krauss, or one who was a privy in estate, is entitled to maintain this plea. But we are of the opinion that the relation of the defendant in error to D. W. Krauss was so nearly analogous to that of a privy that it was entitled to the same relief as one would have been who was in the strictest sense a privy. In 37 C. J. 718, § 33, it is said: "One who purchases land covered by a mortgage acquires such a privity of relationship to the debtor as to entitle him to plead the statute [of limitations] against the mortgagee, so far as the subjection of the land itself is sought, whether the mortgagor pleads it or omits to plead it, and the same rule applies even where he expressly declines to plead it. . . A junior mortgagee may plead the statute against the enforcement of a senior mortgage." In 17 R. C. L. 963, where the subject of the limitation of actions is discussed, the following language in respect to this question appears: "The bar of the statute of limitations may be invoked by a junior lien claimant in all cases when the bar could be invoked by the debtor, unless he has, by agreement or otherwise, estopped himself. Such claimant may

also invoke the bar in case the senior claimant has had either actual or constructive notice of the subsequent lien, although the right of action may still be alive as against the debtor, provided the full period of time required by the statute has elapsed since the interest of the subsequent lienholder was acquired, and the senior claimant has had either actual or constructive notice of such interest for that period of time. On these principles the holder of a junior mortgage may plead the statutory bar against the enforcement of a senior mortgage, even though the mortgagor declines to plead the statute." Citing Boucofski v. Jacobson, 36 Utah, 165 (104 Pac. 117, 26 L. R. A. (N. S.) 898), and Hopkins v. Clyde, 71 Ohio St. 141 (72 N. E. 846, 104 Am. St. R. 737, 763, note, 1 Ann. Cas. 1000). See also *Caldwell* v. *Montgomery,* 8 *Ga.* 106, where a principle somewhat analogous was laid down, and *Dawson* v. *Callaway,* 18 *Ga.* 573, where it was held that the statute of limitations can be pleaded by those in whose favor it operates and by those claiming under them. See also *Pendley* v. *Powers,* 129 *Ga.* 69 (58 S. E. 653). The case of *Strickland* v. *Jones,* 131 *Ga.* 409, 415 (62 S. E. 322), differs in its facts from the above-cited cases. The authorities cited, which we deem sound, rule the controlling question in this case adversely to the plaintiffs in error. The court did not err in overruling the demurrer.

*Judgment affirmed. All the Justices concur.*